NATIONAL CANDY CO. v. MILLER.

(Circuit Court of Appeals, Eighth Circuit.   March 9, 1908.)

No. 2,661.

1. MASTER AND SERVANT—INJURIES TO SERVANT—DANGEROUS MACHINERY.

Where plaintiff was injured while operating a candy cutter, and it was undisputed that the practical operation of the cutter in admitting the cardboard with the candy thereon to pass under the fender over the knives could not well have admitted of a smaller space than that allowed between the fender and the moving candy, the machine was not defective as not sufficiently safeguarded.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 228–231.]

2. SAME—"FELLOW SERVANTS."

Where plaintiff employed to operate a candy-cutting machine obtained the candy to be passed through the machine from his foreman, who had no authority to hire or discharge his co-employés, he was plaintiff's fellow servant, so that plaintiff could not recover for the foreman's negligence in furnishing him candy which was not sufficiently cooled to be cut in safety by the machine.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 486–492.

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, p. 7662.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668, Flippin v. Kimball, 31 C. C. A. 286.]

3. SAME—FELLOW-SERVANT LAW.

The Missouri fellow-servant law does not extend to the employment of servants in a candy factory engaged in cutting slabs of candy by a machine.

4. WORDS AND PHRASES—"FIXED."

The word "fixed," as ordinarily used, means securely placed, fastened. settled, immovable, unalterable.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, pp. 2829–2830.]

5. SAME—"TRAVERSE."

The word "traverse," when used as a verb, primarily means to lay in a cross direction, to cross, while the participle "traversing" implies adjustable laterally, having a lateral or swinging motion.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, p. 7083.]

6. MASTER AND SERVANT—INJURIES TO SERVANT—STATUTES—MACHINES.

Mo. Rev. St. 1899, § 6434 (Ann. St. 1906, p. 3217), provides that no minor or woman shall be required to work between the "fixed or traversing" parts of any machine while it is in motion.   Plaintiff, a minor, was employed to operate a candy-cutting machine, the knives of which were covered by a hood and protected by wooden guards.   The candy was handed to plaintiff in slabs on pieces of cardboard, and he was directed to shove this under the knives by seizing the cardboard with his thumb and first finger, and pressing the candy from the rear with the palm of his hand toward the fender.   The cardboard was about 18 inches square, and the candy thereon from 10 to 12 inches square, so that plaintiff had ample opportunity to disengage his hand from the cardboard before any jerking motion of the machine could have drawn his hand under the knives. *Held,* that plaintiff was entirely outside of and away from the motion of the machine, and was therefore not entitled to predicate an action for injuries to his hand by being caught in the machine on such section.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

William R. Gentry (J. E. McKeighan and M. F. Watts, on the brief), for plaintiff in error.

William R. Scullin (Harry H. Haeussler, George A. H. Mills, and F. A. Chopin, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is a writ of error to have reviewed the judgment obtained by the defendant in error (hereinafter designated the plaintiff) against the plaintiff in error (hereinafter designated the defendant) for personal injury. At the time of the injury the plaintiff was a minor between 16 and 17 years old, well developed mentally and physically. The defendant was conducting a candy factory in the city of St. Louis, and the plaintiff was in its employ as an operator. The cutting machine at which he worked is best illustrated by the two exhibits hereto attached:

When at work the plaintiff stood at the side of the machine where the revolving belt, A, ran. The candy was placed by a fellow workman named Nemuth, who prepared it, on the table, E, from which the plaintiff took it, placing it upon a cardboard on the belt, A, to be run under and cut into squares by the knives. The belt, A, is the conveyor passing over two rollers, like an ordinary belt in a factory. The knives were under the box or hood, B, to protect them, and prevent any one from coming in contact with them when working about the machine. Protruding from beneath this hooded box were wooden guards or fingers, marked "C" in Exhibit 1, and "X" in Exhibit 2. The candy, when placed on the cardboard as the belt revolved, was carried directly under the finger guards to the knives. The object of the finger guards, extending the length of the knives, was to prevent the hand or fingers of the operator from being carried too near to the moving knives. After the candy was thus passed under the

knives, and cut into strips, it came out upon a table, designated as "D" in Exhibit 1. As some of the candy would slip, and not be cut into the desired shape in passing through the knives, that portion of it would be sprinkled by the operator with a little sugar kept in the bucket marked "F" in the exhibit, and carried back on the cardboard by this operator, and again placed on belt A, and run through the knives, turning it out at right angles to its former position.

Exhibit 2 shows the box guard over the knives removed. The finger fenders stand out beyond the knives, just high enough to admit the cardboard and candy to pass freely thereunder to the knives.

The plaintiff had been at work at this place from two to three days before the accident, and was fully instructed by the foreman as to the manner of operating the candy in passing to the knives, and how to hold his hand and fingers on the cardboard in guiding it. The manner of holding the hand, as was customary, and as he was directed, was to hold the palm perpendicularly, toward the finger guards, as he steered the candy with his finger tips, his thumb and finger being on the cardboard behind the candy, so that the palm of his hand in the movement would come to the finger guard, when he should at once disengage his hand. He had seen the knives, knew their position and manner of operation, and was fully advised of the danger of permitting his hand, or his fingers to pass under the guard. The grounds of negligence imputed by the petition to the defendant, whereby he claims that his hand passed beyond the guard, and came in contact with the knives, are (1) that the defendant negligently required him to operate a machine which was unsafe and dangerous, because its operation exposed him, and brought him in close proximity to said revolving blades; (2) that he was compelled, in guiding the candy into said machine, to have his hands on the candy in close proximity to the revolving blades; (3) that the defendant failed to instruct him in the operation of the machine, or warn him of the danger of having his hand drawn into the same; (4) that the defendant negligently furnished him candy unsafe and unfit to be passed into the machine, as it was at the time of a soft, sticky, clinging substance, not sufficiently cooled, and not provided against the contingency of its sticking to said knife blades; (5) that the defendant failed to provide proper and sufficient guards or shields around said blades; (6) that at the time of the accident there was in force in the state of Missouri the following provisions of the statute, to wit: Rev. St. 1899, §§ 6433, 6434 (Ann. St. 1906, p. 3217):

"Sec. 6433. Belting, etc. To be Guarded—The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to the persons employed therein or thereabouts while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments.

"Sec. 6434. Minor Or Woman Not To Clean Or Work In Certain Places About Moving Machinery—No minor, or woman shall be required to clean any part of the mill, gearing or machinery in any such establishment in this state, while same is in motion, or work between the fixed or traversing parts of any machine, while it is in motion by the action of steam, water or other mechanical power."

The petition charges that defendant disregarded said statutory provisions in failing to safely guard the belt of said cutting machine, and failing to post notices of the danger of coming in contact with them, and requiring the plaintiff, a minor, to work upon and between said cutting machine, and between the fixed and traversing parts of the same while it was in motion. It is quite apparent from the foregoing statement of facts that there is no foundation for the imputed negligence as to the character of the machine which the defendant was operating, or in its failure to properly guard the knives of the machine. The evidence was undisputed that its practical operation in admitting the cardboard with the candy on it to pass under the fender could not well have admitted of a smaller space than that allowed between the fender and the moving candy. The allegation of failure to advise the plaintiff of the manner of operating the candy on the conveyor and the danger to him of suffering his hand or fingers to pass under the guard is wholly contradicted by his own testimony.

In respect of the imputed negligence of the defendant in furnishing to the plaintiff candy on the occasion in question in an unsafe and unfit condition, the substance of the evidence was that the man Nemuth who had charge of the matter of the preparation of the candy, and delivering it on the table, E, was an experienced man for such work, and that the candy was prepared by him in the usual manner, and no difficulty had ever been experienced before in passing candy so prepared under the guard to the knives. The plaintiff claims that the candy was composed of cocoanut, coated with chocolate. Candy of the same composition, prepared by Nemuth in appropriate block, had been passed under the knives by the plaintiff immediately before the block in question, without any difficulty. He claims in his testimony that, when he placed the second block of candy on the conveyor, by reason of its stickiness, the knives jerked suddenly the cardboard upon which the candy rested, carrying his hand underneath the fender in contact with the knives. The evidence without contradiction showed that immediately after the accident just after his hand was released from the machine, it was found that the candy had passed successfully through on to the table, D, properly cut.

On this state of the proof the court in its charge said:

"I do not believe that the testimony here produced would justify the court in submitting to you the question as to whether the defendant was guilty of negligence in the kind or character of the candy used. The testimony of the plaintiff on that subject was not satisfactory and clear. Men of general knowledge know that candy is a substance that sticks and is liable to clog. So far as the court instructs you, it limits this inquiry to the statute (section 6434)."

If there was any fault in the matter of the composition and preparation of the particular block of candy in question, it was that of the man Nemuth, who prepared it. He and the plaintiff were fellow servants, working in the same department, the one mixing and preparing the blocks of candy and delivering it to the other to be run through the machine. The fact that Nemuth may have been the foreman of the gang working on his floor in that department, the evidence failing to show that he was authorized to hire or discharge his co-employés,

did not destroy the relation of fellow servants between them, working under a common master. Weeks v. Scharer, 111 Fed. 330, 49 C. C. A. 372; Id., 129 Fed. 333, 64 C. C. A. 11; Louisville & N. R. Co. v. Stuber, 108 Fed. 934, 48 C. C. A. 149, 54 L. R. A. 696; N. P. Co. v. Hambly, 154 U. S. 358, 359, loc. cit., 14 Sup. Ct. 983, 38 L. Ed. 1009. The fellow-servant law of Missouri does not extend to the employment in which the plaintiff and Nemuth were engaged as servants.

Aside from all this, the trial court ruled that the plaintiff had failed to make out a case to go to the jury on any of the grounds of negligence alleged in the petition, save that predicated on said section 6434, Rev. St. Mo. As recovery was had upon this statute, and the plaintiff did not sue out any writ of error on the court's ruling, the only remaining question for our determination is: Did the evidence bring the plaintiff's case within the purview of said statute? Under the charge of the court the recovery must have been had upon the latter clause of section 6434 of the statute, to wit, in requiring the plaintiff, a minor, to "work between the fixed or traversing parts of the machine while it is in motion."

It must be conceded that this statute is not perspicuous. Precisely what is meant by the "fixed" or "traversing" parts of the machine is difficult to define. Under the title "Construction of Statutes," section 4160, 1 Rev. St. Mo. 1899 (Ann. St. 1906, p. 2252), it is declared that:

"Words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law, shall be understood according to their technical import."

The word "fixed," as ordinarily used, and as defined primarily by the dictionary, means "securely placed, or fastened; settled, immovable; unalterable." The verb "traverse," primarily means, "to lay in a cross direction, to cross"; while the participle "traversing" implies "adjustable laterally, having a lateral motion, or swinging motion." This statute would be more comprehensible and susceptible of practical application if it read, "between the fixed and traversing parts of any machine"; because it may be easily perceived that it was the conception of the Legislature that women and minors were assumed to be less observant of cautiousness and concentrated consideration, and would be exposed to a more special danger when working between the parts of a machine fixed with traversing motion, crossing or laterally adjusted. In short, that they would be liable to be caught and injured when engaged about such constructed parts of a machine than if working in a different position. Be this as it may, it is to be kept in mind that the statute does not interdict the employment of women or minors to work at or about any machine, but it is directed only against requiring them to work between the designated parts of the machine. This distinction was not guardedly kept in mind by the trial judge in his charge to the jury when he said:

"The court charges you, as it has heretofore charged you, that the employment of a minor in that establishment about the machinery described to you was an act of negligence upon the part of the defendant."

It hardly admits of debate, as shown by the photograph, that where the plaintiff was assigned to do his work, to the left of the table, A, he was not between either the fixed or traversing parts of the machine, but was outside of and away from such motion.

It is, moreover, contrary to the physical facts that the plaintiff should have sustained his injury but for his own negligence. As the candy on the cardboard, according to his testimony, was passing for the first time under the knives, if he was observing the instructions given, the tip of his thumb and first finger was on the cardboard pressing the candy from the rear with the palm of his hand towards the fender. So if, as a matter of fact, the motion of the knives was arrested by reason of the stickiness of the candy, that would have occurred the moment the knives came in contact with the front block of the candy. As the cardboard was about a foot and a half square, and the candy placed thereon was from 10 to 12 inches square, he had ample time to disengage his hand from the cardboard in the rear of the candy before the jerking motion could have possibly drawn his hand under, if he had been giving any heed to the situation.

The request made by the defendant that no recovery could be had predicated of said section 6434 of the statute should have been given. It results that the judgment of the Circuit Court must be reversed and the cause remanded, with directions to grant a new trial.